IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


VICTOR L. TORRES,

       Plaintiff,

v.                                        Civil Action No. 5:10cv68
                                        (Judge Stamp)

JAMES N. CROSS, D. PETRISKO,
R. POISSONNIER AND M. AZUMAH,

       Defendants.


## REPORT AND RECOMMENDATION

### I. Procedural History

On June 18, 2010, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In the complaint, the plaintiff alleges that on April 8, 2009, defendant Poissonnier entered the plaintiff's cell, conducted a strip search of him, and proceeded to confiscate all of his personal property. Complaint [dckt. 1] at 3. In the process, defendant Poissonnier tore a picture of the plaintiff's fiancee and threw it on the floor. Id. The plaintiff was given a receipt for the confiscated property. Id. Because defendant Poissonnier initially refused to return the property, however, the plaintiff contacted his attorney to request assistance in the matter. Id. at 3-4. Although the plaintiff's property was returned the next day, April 9, 2009, the plaintiff alleges that defendant Poissonnier told the plaintiff he would be sorry. Id.

On November 9, 2009, the plaintiff was escorted to a lieutenant's office where he was

stripped searched and then taken to a room in the infirmary. Id. The plaintiff asserts there were two men waiting for him in the room; one who identified himself as Mr. Ransdorff, but that the plaintiff later determined was defendant Petrisko, and another who was supposedly from the Attorney General's Office in Washington, D.C. Id. The plaintiff asserts that he was questioned about a staff member who was under investigation but that he did not know anything about it. Id.

The plaintiff was later placed in Administrative Segregation. Id. at 7. The plaintiff contends that his placement in Administration Segregation was due to his failure to answer the questions of the two men investigating the staff member. Id.

On November 17, 2009, the plaintiff was escorted to a lieutenant's office in Administrative Segregation by defendant Petrisko. Id. Once in the office, defendant Petrisko allegedly threatened the plaintiff with criminal prosecution if he did not cooperate in the investigation of staff misconduct. Id. After being advised to not tell anyone about the matter, the plaintiff was escorted back to his cell. Id.

During the time he was confined in Administrative Segregation, the plaintiff asserts that he requested medical attention on numerous occasions for high blood pressure, headaches, anxiety, chest pains, and a serious eye problem. Id. According to the plaintiff, no medical attention was given. Id. The plaintiff asserts that defendant Azumah is the person that deliberately denied him needed medical attention. Id.

The plaintiff was eventually transferred to the United States Penitentiary in Pollack, Louisiana ("USP-Pollack"). Id. at 8. The plaintiff asserts that USP-Pollack is the most violent penitentiary in the country, and that the defendants conspired to have him transferred to that facility for the express purpose of having him harmed or killed, simply because the plaintiff failed to

cooperate in their investigation of staff. Id.

Upon a preliminary review of the file, the undersigned determined that summary dismissal of the complaint was not warranted at that time, and directed the defendants to file an answer. [Dckt. 14] On November 4, 2010, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. [Dckt. 29] In their memorandum in support of their motion (dckt. 32), the defendants assert that the complaint should be dismissed, or judgment entered in their favor, for the following reasons:

>   (1) plaintiff failed to exhaust administrative remedies;
>
>   (2) defendants Azumah and Poissonnier had no personal involvement in the decision to transfer the plaintiff;
>
>   (3) defendant Cross should be dismissed as Bivens liability may not be premised on a theory of *respondeat superior*;
>
>   (4) plaintiff fails to state a claim upon which relief may be granted;
>
>   (5) plaintiff does not state a cognizable claim of conspiracy; and
>
>   (6) the defendants are entitled to qualified immunity.

Because the plaintiff is proceeding without counsel in this case, on November 10, 2010, the Court issued a Roseboro Notice advising the plaintiff of his right to file a response to the defendants' motion. [Dckt. 33] Rather than file a response, however, on December 6, 2010, the plaintiff filed a Motion for Leave to File Amended Complaint. [Dckt. 36] That motion was granted [dckt. 36] and the plaintiff's amended complaint was filed on December 7, 2010 [dckt. 37].

In the amended complaint, the plaintiff asserts that he has seen defendant Poissonnier seize the personal property of inmates without cause on several occasions. [Dckt. 37 at 2-3] Moreover, the plaintiff asserts that defendant Poissonnier uses that property to compensate inmates who provide

3

him with certain information. Id. at 3. On April 8, 2009, Poissonnier came to the plaintiff's cell and conducted a strip search of the plaintiff in a derogatory manner. Id. Specifically, the plaintiff asserts that Poissonnier demeaned and humiliated him during the strip search by conducting an unnecessarily extended search and making rude comments and taunting him while he was naked. Id. Afterward, Poissonnier confiscated the plaintiff's personal property, and destroyed a photograph of his fiancee, the plaintiff immediately complained of Poissonnier's behavior to several officials, including defendant Cross. Id. The next day, Poissonnier returned the confiscated property but told the plaintiff that he would pay for complaining to Poissonnier's superiors. Id.

On November 9, 2009, the plaintiff was removed from the general population at USP-Hazelton, taken to a lieutenant's office, strip searched, and lead to a room in the infirmary. Id. at 3-4. Defendant Petrisko, and an inspector from the Attorney General's Office were present in the room. Id. The plaintiff was questioned by these individuals about criminal activity. Id. at 5. However, the plaintiff alleges that he asserted his right not to speak with them and attempted to terminate the interview. Id. The plaintiff was informed that if he did not cooperate, he would be placed in the Special Housing Unit ("SHU"). Id. The plaintiff did not cooperate with the investigation and was placed in the SHU, where he remained for several months. Id. at 6.

On November 17, 2010, the plaintiff was escorted to a lieutenant's office. Id. The plaintiff asserts that at that time, defendant Petrisko threatened him with criminal charges, prolonged confinement in the SHU, and a transfer to another facility if he did not cooperate. Id. The plaintiff exercised his "right to remain silent." Id.

According to the plaintiff, defendants Petrisko and Poissonnier then conspired to place him and two other prisoners in the SHU under separate status in connection with the criminal

4

investigation. Id. The plaintiff asserts that separate status is a designation requiring the named individuals be kept apart. Id. In general, prisoners on separate status in connection with an ongoing investigation are suspecting of cooperating with officials. Id. The plaintiff asserts that Petrisko and Poissonnier knew this, or should have known this, and that inmates on separate status are often attacked, maimed or even murdered by other inmates. Id. at 6-7.

As a result of his separate status, the plaintiff asserts that he was suspected by other inmates of cooperating with officials and that his life was placed in danger. Id. at 7. Because he feared for his safety, the plaintiff asserts that he could not eat or sleep, and that he suffered severe gas attacks which caused him extreme pain and suffering. Id. In addition, the plaintiff contends that he suffered high blood pressure, headaches, chest pains and anxiety attacks. Id. The plaintiff complained of these symptoms, as well as an eye problem he was having, to defendant Azumah, a nurse practioner. Id. at 8. The plaintiff alleges that defendant Azumah took no action with regard to his health concerns. Id.

Eventually, the plaintiff was transferred to USP-Pollack, a violent facility where aggravated assaults and murders are common. Id. The plaintiff asserts that his separate status, and his transfer, were due to his failure to provide information to defendant Petrisko's investigation. Id.

Next, the plaintiff asserts that the Bureau of Prisons ("BOP") has a 4-step administrative remedy process. Id. That process entails filing an informal resolution request, a BP-9 to the Warden, a BP-10 to the Regional Office, and a BP-11 to the Central Office of the BOP. Id. Moreover, the plaintiff argues that the Code of Federal Regulations does not require any more than that. Id.

Furthermore, the plaintiff asserts that he filed a tort claim with the Department of Justice on

December 20, 2009, by sending a Standard Form 95. Id. In the alleged tort claim, the plaintiff sought compensation for his lost property, emotional distress and medical negligence. Id. The plaintiff asserts that he never received a response to his tort claim. Id.

Based on this information, the plaintiff alleges the following causes of action:

(1) defendant Petrisko violated his First and Fifth Amendment Constitutional rights by "placing him under suspicion";

(2) the defendants individually, or in combination, retaliated against the plaintiff for exercising his right to remain silent in violation of the First and Fifth Amendments to the United States Constitution;

(3) the defendants individually, or in combination, falsely and maliciously placed the plaintiff on status that they knew, or reasonably should have known, would result in his being placed under suspicion among the prison population, inflicting emotional distress;

(4) defendant Poissonnier destroyed the plaintiff's personal property;

(5) defendant Azumah failed to treat the plaintiff's injuries and suffering in violation of his right to adequate medical care under the Eighth Amendment to the United States Constitution;

(6) defendant Azumah committed medical malpractice by failing to treat the plaintiff's injuries and suffering; and

(7) defendant Cross was negligent for failing to properly supervise his subordinates, causing the plaintiff to be harmed.

Amended Complaint [dckt. 38] at 9-10.

As relief, the plaintiff seeks compensatory damages against the defendants in the amount of $50,000, and exemplary damages against defendants Poissonnier and Petrisko, individually or in tandem, in the amount of $100,000. Id. at 11.

Because the plaintiff's complaint clarified his existing claims, and also alleged new ones, the defendants were given the opportunity to file a response. [Dckt. 37] The defendants filed a response to the plaintiff's amended complaint on December 16, 2010. [Dckt. 40]. In their response,

the defendants argue that:

(1) exhaustion of a tort claim is not a substitute for exhausting Bivens claims;

(2) if actually sent, the BOP never received the plaintiff's tort claim;

(3) the plaintiff has failed to name an appropriate defendant under the Federal Tort Claims Act ("FTCA");

(4) the plaintiff does not have, nor did he ever have, any separates; and

(5) the plaintiff cannot challenge his placement in the SHU as inmates have no constitutional right to housed in a particular institution, at a particular custody level, or in a particular unit of a correctional facility.

On January 28, 2011, the plaintiff filed his Opposition to the Defendants' Motion to Dismiss [dckt. 42] and a Motion to Continue Summary Judgment [dckt. 43].

In his response in opposition, the plaintiff asserts that as a *pro se* plaintiff, his complaint is entitled to liberal construction. [Dckt. 42 at1] Moreover, he contends that the defendants are not entitled to qualified immunity. Id. at 2-3.

In his Motion to Continue Summary Judgment, the plaintiff asserts that he has not had the opportunity to conduct discovery in this matter, which would allow him to obtain essential evidence needed to oppose the defendants' motion for summary judgment. [Dckt. 43 at 2] Thus, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the plaintiff asks the Court to continue summary judgment to allow him to obtain that information. Id. In his memorandum in support of his motion to continue, the plaintiff asserts that he has already served upon the defendants a Request to Produce Documents and Tangible Things seeking information related to:

(1) issue of exhaustion of administrative remedy;

(2) justification for defendant Poissonnier's[1] actions on April 8, 2009, in searching the plaintiff's cell;

(3) threats made against plaintiff on April 9, 2009;

(4) frequency of contact between the plaintiff and the defendants during the relevant time period;

(5) supervisory liability and *respondeat superior*;

(6) deprivation of rights, privileges and immunities;

(7) identification of witnesses;

(8) plaintiff's custody classification before, during and after the relevant period for the purpose of demonstrating retaliatory conduct;

(9) the actions complained of on November 9, 2009, specifically, to corroborate the incident and presence of the identified parties;

(10) defamation; and

(11) inadequate medical treatment/negligent medical treatment.

## II.  **Motion to Continue Summary Judgment**

Pursuant to Rule 7 of the Local Rules of Prisoner Litigation in the Northern District of West Virginia, discovery is not permitted without leave of the Court. In this case, the Court has not yet granted the parties permission to conduct discovery. Nonetheless, Rule 56(f) of the Federal Rules of Civil Procedure provides:[2]

---

[1] In the memorandum, the plaintiff asserts that he requested justification of defendant Petrisko's actions on April 8, 2009, in searching his cell. [Dckt. 44 at 18] However, according to the complaint and amended complaint, it was defendant Poissonnier who searched the plaintiff's cell on April 8, 2009.

[2] The defendants' motion to dismiss is properly construed as a motion for summary judgment. Fed.R.Civ.P. 12(d) ("If, on a motion under rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or,
> (3) issue any other just order.

Moreover, summary judgment is usually not appropriate unless there has been "adequate time for discovery," Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex Corp., v. Catrett, 477 U.S. 317, 322 (1986)), and is generally disfavored when the opposing party makes "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." VISA Int'l Serv. Ass'n, v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986)). However, in these circumstances, discovery is not a sanctioned fishing expedition. The opposing party's affidavit must pinpoint the specific information sought, and how it creates a genuine issue of material fact that defeats summary judgment. Id. The evidence must plausibly exist, or in other words, cannot "almost certainly [be] nonexistent" or an "object of pure speculation." Id.

### III. Analysis

In this case, the defendants have alleged that the plaintiff has failed to exhaust his administrative remedies prior to filing suit. Thus, this is a threshold matter that must be addressed in conjunction with his motion to continue summary judgment but before consideration of the plaintiff's claims on the merit.

**A. Plaintiffs' Bivens Claims**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42

U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[3] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741 n. 6. Moreover, an inmate must fully complete each level of the process in order to properly exhaust his administrative remedies and may procedurally default his claims if he fails to do so. See Woodford v. Ngo, 548 U.S. 81, 93-94 (2006) (the PLRA requires *full* and *proper* exhaustion and has provisions which contain a procedural default component).

The BOP makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at USP-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal.

In this case, the first incident took place on April 8, 2009, when the plaintiff was strip

---

[3] Porter at 524.

searched, had his cell searched and his property confiscated. The plaintiff immediately contacted his attorney who in turn, wrote a letter to the Warden complaining of the incident. Complaint at Ex. B. However, in the letter, even the plaintiff's attorney acknowledges that the letter is not a substitute for filing administrative remedies. Id. The letter, dated April 15, 2009, specifically stated, "[w]hile I am urging my client to follow administrative remedies . . . I am most concerned about his photograph being torn up in the process."[4] Id. Clearly, the plaintiff was advised by counsel to engage the administrative remedy process with regard to the April 8, 2009 incident. Id. Nevertheless, he did not file an administrative remedy with regard to the April 8th cell search and alleged destruction of his photograph until January 4, 2010. [Dckt. 32, Ex. 1 at ¶ 7-8] This submission was clearly untimely[5] and was properly rejected for that reason. Id. Thus, the plaintiff has procedurally defaulted any claims he had related to the April 8, 2009 incident. See Woodford, 548 U.S. at 93-94.

The second incident took place on November 9, 2009, when the plaintiff was taken from the general population, strip searched, interviewed by defendant Petrisko and placed in administrative detention. On November 17, 2009, the third incident occurred when the plaintiff was again interviewed by defendant Petrisko.

The plaintiff filed an informal administrative remedy on November 24, 2009. Dckt. 1-7. In that remedy, the plaintiff complained of "unprofessional vindictive harassment" and threats by

---

[4]Defendant Cross, the Warden, responded to plaintiff's attorney on May 22, 2009. Complaint at Ex. C. In his letter, Warden Cross advised plaintiff's attorney that he had inadequate information to properly formulate a response, as the letter from the plaintiff's attorney did not provide the date of the incident. Id.

[5]An inmate must complete informal resolution of a complaint and submit his formal remedy request to the Warden within 20 calendar days of the date the incident in question occurred. See 28 C.F.R. § 542.14(a),

defendant Petrisko on November 9th and 17th. Id. It does not appear that staff provided an answer to the plaintiff's informal remedy request.

On December 22, 2009, the plaintiff filed his formal remedy (BP-8) to the Warden. Id. In his formal remedy, the plaintiff complains of unprofessional and vindictive threats made by defendant Petrisko. Id. On January 4, 2010, the plaintiff received a response advising him that his request was untimely because it was not filed within 20 days of the date the event complained of occurred. Id.

In his appeal to the regional office, the plaintiff again complains of unprofessional and vindictive threats made by defendant Petrisko. Id. According to the grievance, dated January 12, 2010, the plaintiff attached the response from the Warden and the unanswered informal request to staff. Id. On January 19, 2010, the regional office rejected the plaintiff's appeal for allegedly not providing a copy of the Warden's response to his BP-8. Id.

On February 4, 2010, the plaintiff filed an appeal to the Central Office. Id. In his appeal, the plaintiff asserts that he is being unjustly punished and deprived of his basic rights by his vindictive housing in administrative detention. Id. He further asserts that he is experiencing headaches, stress and anxiety attacks. Id. He sought to have these issues remedied, and to have staff investigated and sanctioned or reprimanded. Id. On March 17, 2010, the Central Office concurred with the institution's rationale for rejecting the remedy, deemed the request untimely, and rejected the plaintiff's appeal. Id.

Pursuant to 28 C.F.R. § 542.14(a), an inmate must complete informal resolution of a complaint and submit his formal remedy request to the Warden within 20 calendar days of the date the incident in question occurred. Therefore, with regard to the incidents that occurred on November

9th and 17th, the plaintiff had until November 29th and December 7th, respectively, to file his formal complaints with the Warden. The plaintiff did not file his formal complaint until December 22, 2010. Thus, his request was untimely and properly rejected.

The plaintiff argues that he exhausted his administrative remedies because he filed at all levels of the BOP administrative remedy process. In support of this contention, the plaintiff asserts that, under the Code of Federal Regulations, all he must do to properly exhaust his administrative remedies is file his complaint at each level. The plaintiff's argument, however, is misguided.

Pursuant to the Supreme Court's decision in Woodford, exhaustion of administrative remedies is not complete simply by filing a complaint at all levels. Exhaustion is only complete upon full and proper exhaustion. Woodford, 548 U.S. at 93-94. That means that the inmate must comply with the "system's critical procedural rules," including time requirements. Id. at 95. In this case, the plaintiff did not timely file his grievance and his complaint was appropriately rejected for that reason. Thus, the plaintiff has procedurally defaulted the claims related to the incidents occurring on November 9th and 17th.

The fourth incident the plaintiff complains of is the alleged inadequate medical care he received while being housed in administrative detention. However, the only remedy which addresses this issue is a brief mention of his physical ailments in his February 4, 2010 appeal to the Central Office. Complaint at 1-7. In that appeal, the plaintiff asserts that he suffers from various medical ailments as a result of being placed in administrative confinement, but not that he has been denied treatment for those ailments. Moreover, even if he had complained of the failure to provide treatment in that appeal, the failure to raise that issue in the lower levels of the administrative procedure creates a procedural default of that claim. See 28 C.F.R. § 542.12(b)(2) ("[a]n inmate

may not raise in an Appeal issues not raised in the lower level filings"). Accordingly, this claim is not exhausted and/or procedurally defaulted.

B.  **The Plaintiff's Tort Claim**

The disposition of a tort claim by a federal agency is a prerequisite to initiating suit in the district court. 28 U.S.C. § 2675. Section 2675(a) states:

> [a]n action *shall not* be instituted . . . against the United States for money damages for injury . . . caused by the negligent or wrongful act or omission of any employee . . . while acting within the scope of . . . employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section. (Emphasis added).

In this case, the plaintiff provides a copy of a Claim for Damage, Injury or Death he filed with the BOP on December 20, 2009. The BOP, however, contends that it never received the plaintiff's tort claim. Nonetheless, assuming for purposes of this order that the plaintiff did file the tort claim as he has alleged, pursuant to § 2675(a), the BOP had six-months from December 20, 2009 to respond to the plaintiff's claim. Six months from that date is June 20, 2010. This case was filed on June 18, 2010, and is therefore, premature.

C.  **Plaintiff's Request to Continue Summary Judgment**

In his memorandum in support of his request to continue summary judgment, the plaintiff notes that the defendants contend he has failed to demonstrate that he fully exhausted his administrative remedies. [Dckt. 44 at 15] He argues, however, that because exhaustion is an affirmative defense, he does not have to plead or demonstrate exhaustion in his complaint. Id. Moreover, he contends that the matter is not ripe for judicial review and should be continued

because he has not had the opportunity to conduct discovery. Id.

Furthermore, the plaintiff notes that he has served a request for production of documents which seeks information related to the "issue of exhaustion of administrative remedy." Id. at 18. He does not, however, pinpoint or specify any particular information that discovery is likely to produce on the issue of exhaustion. As evidenced by the attachments to his complaint, the plaintiff already has copies of the administrative remedies he filed with regard to his claims. Moreover, the defendants have filed their records with regard to this matter, and several affidavits which support their contention that the plaintiff's claims are not exhausted. See Dckt. 32 at Ex. A; Att. C and Dckt. 40 at Ex. 1. Those records clearly establish that the plaintiff did not properly exhaust either his Bivens claims or his tort claims prior to filing suit in this Court, and the plaintiff fails to identify any information relevant to that inquiry that might be obtained through discovery, or indeed, that any such evidence even exists. Therefore, the plaintiff's motion to continue summary judgment should be denied.

### IV. Recommendation

For the reasons stated, the undersigned recommends that the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 29), be construed as a Motion for Summary Judgment and **GRANTED to the extent** that it seeks the dismissal of the plaintiff's complaint for the failure to exhaust administrative remedies. Additionally, the undersigned recommends that the plaintiff's Motion to Continue Summary Judgment (dckt. 43) be **DENIED**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A

copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: March 11, 2011.

/s/ David J. Joel
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE