IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

VICTOR L. TORRES,

        Plaintiff,

v.                                    Civil Action No. 5:10CV68
                                                         (STAMP)
JAMES N. CROSS, D. PETRISKO,
R. POISSONNIER and M. AZUMAH,

        Defendants.


              **MEMORANDUM OPINION AND ORDER**
              **AFFIRMING AND ADOPTING MAGISTRATE**
              **JUDGE'S REPORT AND RECOMMENDATION**

                       I.  Background

    The plaintiff, Victor L. Torres, proceeding pro se,[1] filed a civil rights complaint on June 18, 2010 asserting claims against the above-named defendants pursuant to Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"), which established a direct cause of action under the Constitution of the United States against federal officials for violation of federal constitutional rights. Bivens, 403 U.S. at 397.  This matter was referred to Magistrate Judge David J. Joel for an initial review and report and recommended disposition pursuant to Local Rule of Prisoner Litigation Procedure 2, et seq., and 28 U.S.C. §§ 1915(e) and 1915(A).

---

    [1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

In the complaint, the plaintiff first alleges that on April 8, 2009, defendant Poissonnier entered his cell, conducted a strip search of him, and confiscated his personal property. While Poissonnier was in the plaintiff's cell, he allegedly damaged a picture of the plaintiff's fiancé belonging to the plaintiff. The plaintiff was given a receipt for the confiscated property, but claims that Poissonnier initially refused to return the items. The plaintiff then contacted his attorney to request assistance in the matter. The following day, Poissonnier returned the plaintiff's property to him and allegedly warned him that he "should have kept his mouth shut." (Compl. at 9.)

The plaintiff further alleges that on November 9, 2009, he was escorted to a lieutenant's office where he was again strip searched and then taken to the infirmary. The plaintiff claims that he was questioned by two men: Mr. Ransdorff and defendant Petrisko. According to the plaintiff, these men interrogated him about the criminal activities of a staff member. The plaintiff states that he informed Ransdorff and Petrisko that he had no information. The plaintiff contends that his failure to answer the questions of these two men resulted in his placement in Administrative Segregation. Next, the plaintiff claims that on November 17, 2009, defendant Petrisko escorted him to a lieutenant's office and threatened him with criminal prosecution if he did not cooperate in the investigation of staff misconduct.

While in Administrative Segregation, the plaintiff asserts that he requested medical attention on numerous occasions, but none was provided.[2] According to the plaintiff, defendant Azumah deliberately denied him needed medical care. The plaintiff was later transferred to the United States Penitentiary in Pollack, Louisiana ("USP-Pollack"), a move which he claims was the result of a conspiracy by the defendants to have him harmed or killed because he failed to cooperate in the investigation of the staff.

After a preliminary review of the file, the magistrate judge determined that summary dismissal of the complaint was not warranted, and he directed the defendants to file an answer. On November 4, 2010, the defendants filed a motion to dismiss, or in the alternative, motion for summary judgment. In support of their motion, the defendants argue: (1) the plaintiff failed to exhaust his administrative remedies prior to his initiation of this action as required by the Prison Litigation Reform Act ("PLRA"); (2) defendants Azumah and Poissonnier should be dismissed from this action for lack of personal involvement in the plaintiff's transfer; (3) defendant Cross should be dismissed from this action under a theory of respondeat superior; (4) the plaintiff does not state a claim upon which relief may be granted because his allegations do not rise to the level of a constitutional violation;

---

[2]The plaintiff claims that he experienced high blood pressure, headaches, anxiety, chest pains, and eye problems.

(5) the plaintiff does not state a cognizable claim of conspiracy; and (6) the defendants are entitled to qualified immunity.

Because the plaintiff is proceeding pro se, the Court issued a Roseboro notice, to which the plaintiff responded by filing a motion for leave to file an amended complaint. The Court granted this motion, and the plaintiff filed an amended complaint on December 7, 2010.

In the amended complaint, the plaintiff re-asserts many of his original allegations and adds that he has seen defendant Poissonnier seize the personal property of inmates without cause on multiple occasions. Moreover, the plaintiff argues that Poissonnier uses that property to compensate inmates who provide him with information. The amended complaint again describes the strip search conducted by Poissonnier, adding that Poissonnier allegedly made rude comments and taunted him. The plaintiff also adds that he complained of Poissonnier's behavior to defendant Cross.

The amended complaint reiterates the plaintiff's claims that the defendants conspired to place him the Special Housing Unit ("SHU") because he refused to cooperate in the investigation conducted by Petrisko. As a result of his separate status designation, the plaintiff contends that he was suspected by other inmates of cooperating with officials and his life was placed in danger. Because he feared for his safety, the plaintiff claims

4

that he suffered high blood pressure, headaches, chest pains, anxiety attacks, and severe gas attacks.

The plaintiff also asserts that he filed a tort claim with the Department of Justice ("DOJ") on December 20, 2009 seeking compensation for his lost property, emotional distress, and medical negligence. According to the plaintiff, he never received a response to his tort claim. The relief requested in the plaintiff's amended complaint includes compensatory and exemplary damages against the defendants for the alleged violations of his First, Fifth and Eighth amendment rights, as well as the alleged infliction of emotional distress, destruction of property and negligence.

The defendants filed a response to the plaintiff's amended complaint on December 16, 2010 arguing the following: (1) exhaustion of a tort claim is not a substitute for exhausting Bivens claims; (2) the BOP never received the plaintiff's tort claim; (3) the plaintiff has failed to name an appropriate defendant under the Federal Tort Claims Act ("FTCA"); (4) the plaintiff does not have any "separatees";³ and (5) the plaintiff cannot challenge his placement in the SHU.

On January 28, 2011, the plaintiff filed his opposition to the defendant's motion to dismiss, as well as a motion to continue

---

³Separatees are inmates with whom another inmate cannot be housed. (Decl. of Rebecca Johnson.)

summary judgment. In his response in opposition, the plaintiff asserts that his complaint is entitled to liberal construction and that the defendants are not entitled to qualified immunity. In his motion to continue summary judgment, the plaintiff claims that he has not had an opportunity to conduct discovery, which would allow him to obtain the evidence needed to oppose the defendants' motion for summary judgment. Thus, the plaintiff requests that the Court continue summary judgment.

On March 11, 2011, Magistrate Judge Joel issued a report and recommendation, in which he recommended that the defendants' motion to dismiss, or in the alternative, motion for summary judgment be construed as a motion for summary judgment and be granted to the extent that it seeks the dismissal of the plaintiff's complaint for the failure to exhaust administrative remedies. Additionally, the magistrate judge recommended that the plaintiff's motion to continue summary judgment be denied.

In his report, the magistrate judge advised the parties that, pursuant to 28 U.S.C. § 636(b)(1), any party objecting to his proposed findings and recommendation must file written objections within fourteen (14) days after being served with a copy of the report. On March 24, 2011, the plaintiff filed a motion for a standing order enlarging time to respond to all filings. This Court granted the plaintiff an extension of time to respond to the report and recommendation but denied as moot the motion for a

standing order. Despite receiving additional time to file objections, the plaintiff filed none. For the reasons set forth below, this Court finds that the magistrate judge's report and recommendation should be affirmed and adopted in its entirety.

## II. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Because the plaintiff filed no objections, this Court reviews the magistrate judge's report and recommendation for clear error.

## III. Discussion

A. Bivens Claims

Under the PLRA, a prisoner bringing an action under any federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion under § 1997e(a) is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and applies to "all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). If failure to exhaust is apparent from the complaint, federal courts have the authority pursuant to 28 U.S.C. § 1915 to dismiss the case sua sponte. Anderson v. XYZ Corr.

Health Servs., Inc., 407 F.3d 674, 682 (4th Cir. 2005). Actions brought pursuant to Bivens are subject to administrative exhaustion requirements of the PLRA. Porter, 534 U.S. at 524.

Administrative exhaustion requires an inmate to pursue informal resolution before proceeding with a formal grievance. 28 C.F.R. § 542.13. The BOP's formal administrative process is structured as a three-tiered system. 28 C.F.R. § 542.10, et seq. First, an inmate must submit a written complaint to the warden, to which the warden supplies a written response. 28 C.F.R. §§ 542.11 and 542.14. For inmates who do not obtain satisfactory relief at the first tier, the second tier allows the inmate to file an appeal with the Regional Director of the BOP. 28 C.F.R. § 542.15. The third, and final, tier of the formal administrative remedy process is an appeal to the National Inmate Appeals Administrator for the Office of General Counsel. Id. An inmate's administrative remedies thus are considered exhausted only after pursuing a final appeal to the National Inmate Coordinator for the Office of General Counsel.

Proper exhaustion of a PLRA or Bivens claim requires an inmate to file timely and procedurally sound administrative grievances in compliance with the BOP's administrative grievance process as outlined above. See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system

can function effectively without imposing some orderly structure on the course of its proceedings.").

In this case, as noted in the magistrate judge's recommendation, all of plaintiff's claims were procedurally defaulted. This Court addresses each of the four incidents described by the plaintiff: (1) the April 8, 2009 cell search; (2) the November 9, 2009 strip search and interview by Petrisko; (3) the November 17, 2009 interview by Petrisko; and (4) the inadequate medical care he allegedly received while being housed in administrative detention.

After the April 8, 2009 search of his cell and alleged destruction of his property, the plaintiff contacted his attorney who then wrote a letter to the warden complaining of the incident. Although he was advised by counsel to engage in the administrative remedy process, the plaintiff did not file an administrative remedy with regard to this incident until January 4, 2010. This Court agrees that this submission was untimely, as it occurred more than twenty days after the incident in question. See 28 C.F.R. § 542.14(a). Thus, the plaintiff has procedurally defaulted any claims he had relating to the April 8, 2009 incident.

On November 24, 2009, the plaintiff filed an informal administrative remedy complaining of harassment and threats by Petrisko on November 9, 2009 and November 17, 2009. Then, on December 22, 2009, the plaintiff filed his formal remedy to the

9

warden, to which he received a response advising him that his request was untimely. The plaintiff appealed this decision to the regional office, which subsequently rejected the appeal. Next, the plaintiff filed an appeal to the Central Office asserting that he is being punished and deprived of his basic rights. He also complained of various medical ailments. The Central Office deemed the request untimely and rejected the plaintiff's appeal. This Court agrees that because the plaintiff failed to complete the informal resolution of his complaint and submit his formal remedy request to the warden within twenty calendar days of the date the incident in question occurred, it was untimely and properly rejected. See 28 C.F.R. § 542.14(a).

This Court finds no clear error in the magistrate judge's conclusion that the plaintiff did not exhaust his remedies regarding his claims related to the November 9th and 17th incidents. According to Woodford, exhaustion of administrative remedies is only complete upon full and proper exhaustion -- not merely the filing of a complaint at all levels. Woodford, 548 U.S. at 93-94. Although the plaintiff filed complaints at each level, he did not comply with the time requirements for filing grievances, meaning his complaint was appropriately rejected.

Finally, the plaintiff complains of inadequate medical care that he allegedly received while being housed in administrative detention. However, these claims are only addressed briefly in the

plaintiff's February 4, 2010 appeal to the Central Office. In this appeal, the plaintiff complains of various medical ailments, but he does not assert that he was denied treatment. Even if he had asserted that he had been denied treatment, the magistrate judge correctly notes that his failure to raise this issue in the lower levels of the administrative procedure creates a procedural default of that claim. See 28 C.F.R. § 542.15(b)(2). Therefore, this Court finds that the plaintiff's Bivens claims against the defendants must be dismissed for failure to exhaust administrative remedies.

B.  Tort Claim

The disposition of a tort claim by a federal agency is a prerequisite to initiating suit in the district court. 28 U.S.C. § 2675(a). In this case, the plaintiff allegedly filed a claim for damage, injury or death with the BOP on December 20, 2009. The BOP claims that it never received the plaintiff's tort claim. This Court finds no clear error in the magistrate judge's finding that even assuming the plaintiff did file the tort claim, pursuant to § 2675(a), the BOP had six months to respond. Because the plaintiff's claim was filed before the expiration of the six-month period, it is premature.

C.  Motion to Continue Summary Judgment

In support of his motion to continue summary judgment, the plaintiff claims that he has not had an opportunity to conduct

discovery in this matter to obtain evidence in the possession of the defendants. The plaintiff's memorandum in support of his motion to continue summary judgment provides a list of issues for which the plaintiff seeks additional information, including the issue of administrative exhaustion.[4] Because the plaintiff is attempting to obtain necessary discovery information in the possession of the defendants, he argues that summary judgment must be continued.

The plaintiff does not, however, specify what information discovery is likely to produce on the issue of administrative exhaustion. As the magistrate judge noted, the plaintiff is already in possession of the administrative remedies he filed with regard to his claims. Additionally, the plaintiff is aware of the records and affidavits filed by the defendants which support their contention that the plaintiff's claims are not exhausted. These records clearly establish that the plaintiff did not properly exhaust either his Bivens claims or his tort claims prior to filing suit in this Court. This Court agrees that the plaintiff has failed to identify any specific information relevant to the inquiry of exhaustion that might be obtained through discovery. See VISA Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986) (stating that denial of a Rule 56(f) application is

---

[4]This list was included in the plaintiff's request to produce documents and tangible things, which he served upon the defendants.

generally disfavored where the opposing party makes "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists."). Therefore, this Court finds no clear error in the magistrate judge's conclusion that the plaintiff's motion to continue summary judgment should be denied.

IV. Conclusion

For the reasons set forth above, this Court finds that the magistrate judge's report and recommendation is not clearly erroneous and hereby AFFIRMS and ADOPTS the report and recommendation of the magistrate judge in its entirety. Accordingly, the defendants' motion to dismiss or, in the alternative, motion for summary judgment is GRANTED to the extent that it seeks the dismissal of the plaintiff's complaint for failure to exhaust administrative remedies. Therefore, the plaintiff's complaint is DISMISSED WITH PREJUDICE for failure to exhaust administrative remedies. Additionally, the plaintiff's motion to continue summary judgment is DENIED.

Under Wright v. Collins, 766 F.2d 841, 845 (4th Cir. 1985), the petitioner's failure to object to the magistrate judge's proposed findings and recommendation bars the petitioner from appealing the judgment of this Court as to the matters addressed in the magistrate judge's report and recommendation.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

DATED:   April 26, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE